**Philip Condon FISHER, Plaintiff,**

v.

**UNITED FEATURE SYNDICATE, INC. (a Scripps Howard Company), et al., Defendants.**

No. 96–D–1895.

United States District Court,
D. Colorado.

March 4, 1999.

Philip Condon Fisher, Golden, CO, pro se.

Marc D. Flink, Todd L. Lundy, Peter John Korneffel, Jr., Timothy R. Beyer, Baker & Hostetler, Denver, CO, for United Feature Syndicate, Inc., United Media & Newspaper Enterprise Ass'n, Denver Pub. Co., Rocky Mountain News, E.W. Scripps Co., Charles Schultz, Lee Mendelson, Bill Melendez, Kartes Video Communications, Barr Arthur Productions, Inc., News America Pub., Inc., TV Guide Magazine, Kellogg Co., Capital Cities/ABC, Inc., King Feature Syndicate, Inc., Cowles Syndicate, Inc., Advance Publications Inc., SI Holdings, Inc., Scholastic Book Services.

Eileen R. Lerman, Lerman & Associates, Denver, CO, for Wholesale Warehousing of Canada, Cyclone Inc., Cavalieri Cyclone.

Thomas B. Kelley, Steven D. Zansberg, Faerge & Benson, Denver, CO, for CBS, Inc., Turner Broadcasting System, Inc., Walt Disney Co., Buena Vista Home Video.

Charles F. Luce, Jr., Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, CO, for Metropolitan Life Ins.

Barbara W. Gall, Richard Norman Baer, Sherman & Howard, Denver, CO, for TCI of Colorado.

Todd P. Blakely, Sheridan, Ross, P.C., Denver, CO, for General Elcetric Company/RCA/TCE, Montgomery Ward & Co., Kacey Fine Furniture, Fingerhut Corp., Soundtrack, Best Buy Co.

Marc D. Flink, Todd L. Lundy, Baker & Hostetler, Denver, CO, Jon Arnold Pfeiffer, Bryan Cave LLP, Santa Monica, CA, for Universal Press Syndicate, Inc.

William James Barber, City Attorney's Office, Arvada, CO, John O. Rauch, Rauch & Van Voorhis, LLC, Denver, CO, for Sears, Roebuck and Co.

Kim B. Childs, John R. Mann., Kennedy & Christopher, P.C., Denver, CO, for Tyson Foods, Inc.

## ORDER AFFIRMING AND ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION

DANIEL, District Judge.

This matter is before the Court on Plaintiff's pro se copyright infringement complaint pursuant to the Federal Copyright Act, 17 U.S.C. § 101 et seq. The matter was referred to Magistrate Judge Donald E. Abram for a Recommendation, which was issued on June 4, 1997 and is incorporated herein by reference. *See* 28 U.S.C. § 636(b), Fed. R.Civ.P. 72, D.C.COLO.LR. 72.4. In the Recommendation, Magistrate Judge Abram recommends that Defendants' motions and responsive pleadings be granted to the extent that they seek dismissal of Plaintiff's claims, and that the case be dismissed. *Recommendation*, at 22–26. On June 23, 1997, Plaintiff filed a timely Objection, which necessitates a *de novo* determination as to those specified proposed findings or recommendations to which objection is made since the nature of the matter is dispositive. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1).

### I. *Standard of Review*

I first address Plaintiff's objections regarding the Magistrate Judge's application of the correct standard of review for Plaintiff's various claims and motions. Plaintiff initially challenges the Magistrate Judge's application of the standard of review for motions to dismiss. *Objection*, at 2–3. In ruling on a motion to dismiss, I " 'must accept all the well-pleaded allegations as true and must construe them in the light most favorable to the plaintiff.' " *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir.1994)). "A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.' " *Id.* (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995)). Plaintiff claims that the Magistrate Judge did not construe all factual allegations in his favor. *Objection*, at 2. Yet Plaintiff provides no evidentiary support for this claim other than conclusory statements. After reviewing the Recommendation and the record in this case, I conclude that the Magistrate Judge properly applied the correct standard of review.

Plaintiff also requests that this Court grant his motions for summary judgment. *Objection* at 3. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 55(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of proof showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In copyright cases, only after the moving party has properly supported his summary judgment motion will the burden shift to the non-moving party to rebut with significant evidence. *See McRae v. Smith*, 968 F.Supp. 559, 561 (D.Colo.1997). After reviewing the record in its entirety and for the reasons discussed below, I conclude that Plaintiff's summary judgment motion is without merit and must be denied.

### II. *Discussion*

Plaintiff's objections focus on Magistrate Judge Abram's dismissal of his claims as a pro se litigant. Since Magistrate Judge

Abram based his findings on both procedural and substantive grounds, I will similarly address Plaintiff's objections to the Recommendation first as to procedure and then as to substance.

### A. Rule 8

■ Plaintiff argues that Magistrate Abram failed to apply the correct standard of review for a pro se litigant's pleadings. *Objection,* at 2. Plaintiff claims that the Magistrate Judge's negative characterizations of his Complaint do not comport with the liberal construction rule that applies to pro se litigants. *Id.* at 2. Plaintiff further argues that the Complaint is brief as long as the supplements are excluded. *Id.* at 4.

Pleadings should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P 8(a)(2). Failure to comply with Rule 8(a)(2) may result in dismissal. *See Carpenter v. Williams,* 86 F.3d 1015, 1016 (10th Cir.1996). Courts, however, should liberally construe pleadings prepared by a pro se litigant. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gagan v. Norton,* 35 F.3d 1473, 1474 n. 1 (10th Cir.1994), *cert. denied,* 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995). Nevertheless, the Court cannot "assume the role of advocate for the pro se litigant." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). With the supplements, I find that Plaintiff's Amended Complaint is approximately 140 pages long and contains 43 often repetitive, rambling paragraphs and conclusory allegations. Although Plaintiff is a pro se litigant, I am unwilling to liberally construe Plaintiff's pleadings to the point of excluding Rule 8's clear mandate. After reviewing the Complaint, I concur with the Magistrate Judge's findings that the Plaintiff has failed to comply with the requirements of Rule 8(a)(2).

### B. Statute of Limitations:

■ In challenging the Magistrate Judge's recommendation regarding the statute of limitations, Plaintiff first claims that Defendants' misleading conduct of repeated infringement violations delayed Plaintiff from filing suit before the statute of limitations expired. *Objection,* at 4. A cause of action for copyright infringement under section 507(b) of the Copyright Act accrues "when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir.1994). Plaintiff's relies on *Herald Square Music Co. v. Living Music, Inc.,* 205 U.S.P.Q. 1241, 1978 WL 984 (S.D.N.Y.1978), to support his claim that Defendants' conduct should estop them from raising the statute of limitations defense. *Objection,* at 4. Plaintiff's reliance on *Herald Music* is misplaced. In *Herald Music,* the court held that the defendants were estopped from asserting a statute of limitations defense because they had misled the plaintiff into believing litigation was unnecessary, resulting in expiration of statute of limitations. *Herald Music,* 205 U.S.P.Q. at 1243, 1978 WL 984. In contrast, Plaintiff here argues that it was the inundation of alleged violations that delayed him. *Objection,* at 4–5. Plaintiff provides no explanation or evidence, other than conclusory statements, as to how Defendant's allegedly repeated violations misled and discouraged him from asserting his rights in court. Therefore, I find Defendants' alleged conduct is not misleading behavior for purposes of estopping the Defendants' from asserting their statute of limitations defense.

■ Plaintiff also seeks to avoid the statute of limitations deficiencies by alleging a "continuing wrong" exception as adopted by the Seventh Circuit in *Taylor v. Meirick,* 712 F.2d 1112 (7th Cir.1983). Section 507(b) of the Copyright Act states that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Plaintiff's proposed exception would allow him to recover damages for all infringements more than three years in the past as long as the infringement is continuing and

the last infringement occurred within three years prior to initiating suit. *Taylor*, 712 F.2d at 1118–19. Several Circuits, however, have held that section 507(b) bars recovery of damages on any claim accruing more than three years prior to filing suit. *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994); *Stone v. Williams*, 970 F.2d 1043, 1049–50 (2d Cir. 1992), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); *Hoste v. Radio Corp. of America*, 654 F.2d 11, 11–12 (6th Cir.1981); *see also MAI Basic Four, Inc., v. Basis, Inc.*, 962 F.2d 978, 987 n. 9 (10th Cir.1992) (recognizing a division among the Circuits over interpretations of section 507(b)). I am persuaded by this latter view and decline to apply Plaintiff's proffered exception here.

■ Plaintiff also argues that the Defendant's fraudulent concealment of their copyrights justify equitable tolling of the statute of limitations. *Objection*, at 6. To establish fraudulent concealment as a basis for tolling the statute of limitations under Colorado law, Plaintiff must show (1) that Defendants "in equity and good conscience" should have disclosed their copyright notices; (2) that Defendants knowingly and intentionally concealed; (3) that Plaintiff was deceived; and (4) that Plaintiff suffered damages as a result. *Smith v. Boyett*, 908 P.2d 508, 512 (Colo.1995). Throughout his Objection, Plaintiff makes broad, conclusory statements which do not address the individual elements of his fraudulent concealment claims. I therefore conclude that these claims have no merit. Having reviewed the Amended Complaint, the Recommendation, and Plaintiff's Objection, I affirm the Magistrate Judge's findings on the statute of limitations issue.

## C. Standing

Plaintiff next seeks to introduce new evidence to avoid Magistrate Judge Abram's recommendation that Plaintiff lacks standing to assert causes of action which accrued between September 12, 1993 and September 1996. *Objection*, at 7–8. During this time Plaintiff was not the legal owner of the copyrights at issue because he had assigned these exclusive rights to a corporation in 1988, 1990, and 1991. *Recommendation*, at 6–7. The corporation subsequently transferred those rights back to him in September 1996. *Id.* at 6. Section 501(b) of the Copyright Act states that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the owner." 17 U.S.C. § 501(b). "[A] copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991). Magistrate Judge Abram found that the minutes of the September 25, 1996 meeting, at which the corporation ratified the sale and transfer to Plaintiff of the copyrights at issue, failed to include any express accrued causes of action. *Recommendation*, at 6–7. He therefore recommended dismissal of all infringement claims which had accrued during the corporation's ownership of the copyrights. *Id.* at 7.

On June 23, 1997, Plaintiff filed with the Court amended minutes of the September 25, 1996 meeting, which assign the necessary accrued causes of action to Plaintiff. *Objection*, at 7–8. A district judge must make a *de novo* determination of the Magistrate Judge's Recommendation based on the record. Fed.R.Civ.P. 72(b). "[A] district judge may accept, reject, or modify the recommended decision, [or] receive further evidence." *Id.* I conclude that the copyrights at issue were transferred to the Plaintiff in September 1996 for the purpose of enabling him to prosecute this case with respect to all accrued causes of action. *See Motion to Amend Complaint.* Therefore, bearing in mind that Plaintiff is *pro se*, I will allow Plaintiff's submitted minutes which cure the procedural deficiency on this point. Although I conclude that the accrued causes of action are properly before this Court, they nonetheless

fail on their substantive merits for the reasons discussed below.

### III. *Copyright Infringement*

Notwithstanding the procedural defects of the Plaintiff's claims, I have examined the Plaintiff's specific objections to the Magistrate Judge's Recommendation with regard to the substantive merits of the copyright infringement claims. In order for a plaintiff to prevail on a claim for copyright infringement, "Plaintiff must establish both: (1) that it possesses a valid copyright and (2) that Defendants 'copied' protectable elements of the copyrighted work." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996). In addition to direct evidence of copying, "Plaintiff can indirectly prove copying by establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." *Id; Autoskill, Inc. v. National Educ. Support Sys.*, 994 F.2d 1476, 1489 (10th Cir.1993). Liability for copyright infringement will only attach where the Plaintiff can prove that the protected elements of the copyrighted material were copied. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 833 (10th Cir.1993). Copyright law protects only the expression of an idea, not the idea itself. *Autoskill*, 994 F.2d at 1491. The Copyright Act states that copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (1996).

To prove substantial similarity between the copyrighted work and the alleged infringing work, the Tenth Circuit has adopted the "abstraction-filtration-comparison" test. *Country Kids*, 77 F.3d at 1284. The first step of abstraction requires the Court to separate the unprotectable ideas from the work's original expression. *Id.* at 1285. Second, the Court filters out all other unprotectable elements

from the expression. *Id.* Finally, the Court compares the remaining protected elements to the allegedly infringed original work and determines whether the works are substantially similar. *Id.* In making this determination, the Court looks to see if the similarities between the works are so similar that an ordinary reasonable person would find that the defendant had unlawfully infringed the plaintiff's original work. *Id.* at 1288. "The essence of this test is whether the 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.' " *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487 489 (2d Cir.1960)).

■ A Court may find non-infringement as a matter of law where the similarity between the works concerns only non-copyrightable elements of the plaintiff's work or no reasonable jury could find the two works to be substantially similar. *Warner Bros. Inc. v. American Broadcasting Companies*, 720 F.2d 231, 240 (2d Cir. 1983).

### A. Chipper Sherlock Dog vs. Snoopy Sherlock Dog

Plaintiff first objects to the Magistrate Judge's finding that as a matter of law no reasonable jury would find Plaintiff's "Chipper" cartoon to be substantially similar to the Snoopy character, as portrayed in "It's a Mystery, Charlie Brown" and the Metropolitan Life commercials. In his Amended Complaint, Plaintiff argued that the portrayal of Snoopy as a cowardly detective dog infringed Plaintiff's prior original copyrighted work, "Chipper." In his Recommendation, the Magistrate Judge found that Plaintiff relied primarily on his allegations that both Snoopy and Chipper were cowardly detective dogs to establish his copyright infringement claim. *Recommendation*, at 12. The Magistrate Judge held for Defendants as a matter of law upon finding that Plaintiff had failed to establish any other similarities between

the two characters other than that they were both dog detectives. *Id.*

■ In his Objection, Plaintiff adds little to his original arguments on this issue. In addition to arguing that the concept of a cowardly detective dog is protected expression, Plaintiff argues that the allegedly copied misspellings, "Baratry" and "Repleven," plus the Snoopy sherlock dog's cowardly behavior in specific sequences, serve as proof of infringement. *Objection,* at 13–14. I disagree. "In determining whether a character in a second work infringes a cartoon character, courts have generally considered not only the visual resemblance but also the totality of the character's attributes and traits." *Warner Bros. Inc. v. American Broadcasting Cos., Inc.,* 720 F.2d 231, 241 (2d Cir. 1983). After reviewing the record, I conclude that the totality of the alleged similar traits and attributes, viewed in the light most favorable to Plaintiff, fails to satisfy the ordinary observer test.

Furthermore, Plaintiff has failed to indicate how his allegations would satisfy the abstraction-filtration-comparison test under the ordinary observer standard. Plaintiff asks this Court to adopt a "Parallel Column Analysis" approach which would show similarities side-by-side and argues that similarities viewed in this light support his case. *Objection,* at 15–16 (citing *Arnstein v. Porter,* 154 F.2d 464 (2d Cir.1946); *Greenbie v. Noble,* 151 F.Supp. 45 (D.C.N.Y.1957)). I disagree. Plaintiff's explanations of his evidence under this approach still fails to address or satisfy the reasonable observer standard. I therefore affirm the Magistrate Judge's Recommendation as to this issue.

## B. "Chipper" the Cartoon Dog vs. "Chipper" the Puppy

■ Plaintiff next objects to the Magistrate Judge's finding as a matter of law for Defendant RCA on his twentieth claim that Defendant RCA infringed the name and label of Plaintiff's copyrighted comic strip, "Chipper," in its promotional materials. The Magistrate Judge first determined that Plaintiff had not alleged or established Defendants' access to Plaintiff's work. *Recommendation,* at 14. Unless Plaintiff can provide direct evidence of copying, he must establish both access and substantial similarity. *Country Kids,* 77 F.3d at 1284. Plaintiff may meet his initial burden of establishing access by showing that defendant had a reasonable opportunity to view or copy the allegedly infringed work. *Autoskill,* 994 F.2d at 1490. In his Objection, Plaintiff argues that his third claim in the Amended Complaint and exhibit #10 establish access to Defendant RCA. *Objection,* at 17–18. The Amended Complaint, however, contains only allegations of access to Defendant Random House. *Complaint,* at 27–29. Plaintiff's subsequent allegations in his Objection that RCA owned Random House are not contained in the Amended Complaint. Instead, Plaintiff seeks to amend his Amended Complaint through his Objection. Furthermore, after reviewing the Amended Complaint and exhibits, I find that Plaintiff has provided no other charges or evidence suggesting access to RCA. I will not allow Plaintiff to amend his Amended Complaint based on his Objection.

■ Plaintiff's argument for substantial similarity also fails. In general, copyright protection does not extend to "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variation of typographic orientation, lettering, or coloring." 37 C.F.R. § 202.1; *see, e.g., Arvelo v. American Int'l Ins. Co.,* 875 F.Supp. 95, 100, 101 (D.P.R.), *aff'd,* 66 F.3d 306, 1995 WL 561530 (1st Cir.1995) (holding that two words in copyrighted advertising campaign did not receive full protection, were not a substantial portion of the advertising campaign, and could not be protected once removed from the advertising campaign's context). Plaintiff alleges that RCA used the "Chipper" name and label with a similar "concave outer border design" in a caption. *Objection,* at 18. Plaintiff, however, provides no other allegations or evidence of

additional copyright or trademark protection other than the original copyright protecting the "Chipper" comic strip as a whole. I therefore conclude that Plaintiff has failed to state a claim for copyright infringement of the "Chipper" name and label.

## C. "Chicken Chipper" vs. "Chick'n Chipper"

■ Plaintiff also objects to the Magistrate Judge's recommended dismissal of his twentieth claim, alleging that the "Chick'n Chippers" name for Defendant Tyson Foods' chicken products infringed the phrase "Chicken Chipper," which Plaintiff uses in his comic strip. *Objection*, at 18–20. The Magistrate Judge found that Plaintiff had not alleged access as to this claim and Plaintiff failed to respond to this deficiency in his Objection. *Recommendation*, at 15; *Objection*, at 18–20. Furthermore, as noted above, words and phrases are not entitled to copyright protection. 37 C.F.R. § 202.1; *see Arvelo*, 875 F.Supp. at 100, 101. Plaintiff provides no other evidence other than his own conclusory statement that the close similarities between the two phrases is sufficient evidence of infringement. After reviewing the record in this case, I find that Plaintiff has not stated a claim for copyright infringement on this issue.

## D. "Chipper" vs. Peanuts and Other Comic Strips

■ In his remaining objections regarding the "Chipper" comic strip, Plaintiff argues with general conclusory statements that Defendants have infringed his "attitude," "meaning," "style of expression," "sequence of events," "character's dispositions," and "reactions," which he alleges are, in fact, the expression of his ideas. *Objection*, at 20–35. For the reasons discussed above and after reviewing the Amended Complaint and the exhibits, I find Plaintiff's specific objections to be without merit. I concur with the Magistrate Judge's opinion that Plaintiff fails to understand the fundamental differences between idea and expression. Plaintiff

would ask this Court to grant him a monopoly on unprotected elements, such as themes, emotions, and attitudes on which comic strips commonly rely. This I decline to do.

In addition, Plaintiff has simply failed to argue that any of his allegations would lead an ordinary observer to conclude after applying the abstraction-filtration-comparison test that substantial similarities exist between Plaintiff's original work and the Defendants alleged infringing works. Plaintiff instead insists his own Parallel Column Analysis satisfies his burden. *See, e.g., Objection*, at 22, 28 (urging the Court to consider his Parallel Column Analysis). Moreover, even after reviewing Plaintiff's arguments and comparisons, I cannot conclude that a reasonable observer would view the similarities as substantial. "[S]imilarity of idea or function must be distinguished from similarity of artistic expression." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980). "[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of copying." *Id.* As Plaintiff's arguments and exhibits illustrate, comic strips commonly rely on similar themes, "meanings," and attitudes. Nevertheless, taken together, I find that the similarities are not of expression, but of ideas and require that the Magistrates Judge's recommendation be affirmed with regard to these claims.

## E. "Langsyne" Comic Strip vs. "For better or Worse" Comic Strip

■ Plaintiff again objects to the Magistrate Judge's finding that the alleged similarities between scenarios in his "Langsyne" comic strip and a "For Better or Worse" comic strip are only of ideas. Plaintiff states that the "For Better of Worse" comic strip infringed his "Langsyne" expression, which he states is as follows: "Your friends may think your sister or brother is very attractive, but your

closer family relationship develops opposite feelings." *Objection,* at 36. Plaintiff's alleged expression is an idea not protected under the Copyright Act. I therefore affirm the Magistrate Judge with respect to this claim.

I have reviewed all of Plaintiff's remaining objections in his original Objection and find them to be without merit.

For the reasons stated above, the Court concludes that the Magistrate Judge's Recommendation should be affirmed and adopted. Accordingly, it is

ORDERED that the June 4, 1997 Recommendation of Magistrate Judge Abram is AFFIRMED. It is

FURTHER ORDERED that Defendants' Motions to Dismiss are GRANTED in accordance with the Recommendation. It is

FURTHER ORDERED that all remaining outstanding motions filed in this case are DENIED as moot. It is

FURTHER ORDERED that this case is dismissed with prejudice, each party to pay their own costs and attorneys fees.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ABRAM, United States Magistrate Judge.

This matter comes before the Court regarding multiple motions to dismiss by Defendants, motions for summary judgment by Plaintiff, and motions to strike by several parties. United States Magistrate Judge Donald E. Abram hereby makes the following recommendation.

### I. INTRODUCTION

Plaintiff, appearing pro se, has filed a lengthy complaint naming numerous Defendants in this action for copyright infringement. Plaintiff created "Chipper," an unpublished comic strip and manuscript featuring the character Chipper, an "inherent cowardly, Sherlock dog detective." Complaint at ¶ 37. Plaintiff owns copyrights on "Chipper" dated 1971, 1988, and 1991. Most of Plaintiff's claims concern the "Chipper" comic strip and manuscript. Plaintiff also owns a copyright for another comic strip, "Langsyne," which is the subject of additional claims.

### II. STANDARD OF REVIEW

Courts should liberally construe pleadings prepared by a pro se litigant. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gagan v. Norton,* 35 F.3d 1473, 1474 n. 1 (10th Cir.1994), *cert. denied,* 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995). Since this is a pro se complaint, it will be liberally construed in favor of Plaintiff.

#### A. *Motions to Dismiss*

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in favor of the plaintiff. *Tri–Crown, Inc. v. American Federal Sav. & Loan Ass'n,* 908 F.2d 578, 582 (10th Cir.1990). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that the plaintiff can prove no set of facts which entitles him to relief. *Id.*

#### B. *Summary Judgment*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir.1988). "One of the principal purposes of the summary judgment rule is to isolate and [di]spose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the court views the factual record and any reasonable inferences arising from it in the light most favorable to the nonmoving party. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980). "To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for

the nonmoving party. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993). If the court concludes that, based on the record as a whole, no "rational trier of fact" could find for the nonmoving party, summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

### A. *Rule 8*

Several Defendants have moved for dismissal of Plaintiff's complaint [1] for failure to comply with Fed.R.Civ.P. 8. The complaint contains 128 numbered pages and several additional unnumbered pages and lists 43 claims for relief. Much of the complaint consists of rambling paragraphs containing irrelevant and conclusory allegations. Rule 8 of the Federal Rules of Civil Procedure requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A court may dismiss a complaint which does not comply with Rule 8(a)(2). *Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir. 1996) (dismissal appropriate where pleadings fell well short of requirements of Rule 8 and were incomprehensible). As Plaintiff has filed his complaint pro se, the Court must construe his pleadings liberally; however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff has requested leave to file a second amended complaint. Although he has not provided a copy of the proposed second amended complaint to the Court,

he has indicated that the proposed seconded amended complaint merely deletes references to exhibits which have not been properly served on all Defendants. [2] Plaintiff has not complied with the requirements of Rule 8 because none of his claims makes a "short and plain statement." Because Plaintiff's proposed amendments apparently would not remedy this defect, Plaintiff's complaint is subject to dismissal; however, the complaint should be dismissed for additional reasons, discussed below.

### B. *State of Limitations*

Several Defendants argue that many of Plaintiff's claims are barred by the statute of limitations. The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b) (1996). A cause of action under this section accrues when one has knowledge of a violation or is chargeable with such knowledge. *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994). Thus, the statute allows recovery only for those acts occurring within three years of suit. *Stone v. Williams*, 970 F.2d 1043, 1049–50 (2d Cir.1992). Furthermore, § 507(b) "does not provide for a waiver of infringing acts within the limitation period if earlier infringements were discovered and not sued upon, nor does it provide for any reach back if an act of infringement occurs within the statutory period." *Roley*, 19 F.3d at 481 (quoting *Hoey v. Dexel Sys. Corp.*, 716 F.Supp. 222, 223 (E.D.Va. 1989)).

Plaintiff filed his complaint on August 12, 1996. Therefore, all claims which ac-

---

**1.** Plaintiff's amended complaint was filed November 14, 1996. All references to the "complaint" in this recommendation are references to the amended complaint.

**2.** On March 26, 1997, the Court entered an order granting multiple motions to quash service of the original complaint based on the failure of Plaintiff to serve all Defendants with copies of the exhibits which are part of the

complaint. Although Plaintiff has certified that he served two sets of exhibits on a law firm representing several of the Defendants, it is not clear whether the majority of the Defendants have been properly served with a complete complaint, including the exhibits. Nevertheless, this recommendation addresses the merits of Plaintiff's claims because the parties address the merits in their motions.

crued prior to August 12, 1993 are barred under § 507(b). In particular, claims one, two, twenty-three, twenty-four, twenty-five, twenty-eight, twenty-nine, thirty, thirty-five, thirty-six, thirty-seven, and thirty-eight should be dismissed in their entirety because all allegations in those claims concern acts which occurred prior to August 12, 1993.[3] In addition, claims three through fifteen,[4] twenty-six, twenty-seven, thirty-two, thirty-three, and forty-two should be dismissed to the extent they allege acts which occurred prior to August 12, 1993.

## C. *Standing*

Several Defendants argue that Plaintiff does not have standing to sue with regard to his claims which accrued after September 12, 1993 because Plaintiff was not the owner of the copyrights between 1988 and September, 1996. The Copyright Act provides "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right *committed while he or she is the owner of it.*" 17 U.S.C. § 501(a) (1996) (emphasis added). Rights under a copyright may be assigned; however, at least one circuit court has held that if "accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir.1991). Thus, "the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner[,] and the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment." *Id.*

In this case, Plaintiff is the author and original owner of the copyrights at issue. In 1988, 1990, and 1991, Plaintiff transferred all his rights in his copyrights to Fisher's Master Artists Inc. The original complaint in this action was filed by Fisher's Master Artists Inc. with the current Plaintiff appearing pro se for the corporation. Because the complaint was subject to dismissal due to his attempted pro se representation of the corporation, the current Plaintiff filed his amended complaint on November 14, 1996, replacing Fisher's Master Artists Inc. with himself as the sole Plaintiff. Fisher's Master Artists Inc. transferred its ownership in the copyrights back to Plaintiff in September, 1996.

The minutes of the Fisher's Master Artists Inc. meeting at which the corporation "ratified" the sale and transfer of the "Chipper" and "Langsyne" copyrights does not expressly refer to infringement claims which had accrued at that time. Defendants are therefore correct that Plaintiff was not the owner of the copyrights or the rights to institute actions for infringement of the copyrights between August 12, 1993 and the filing of this lawsuit. Thus, any actions which are not barred by the statute of limitations are barred because Plaintiff did not own the copyrights at the pertinent times and does not own the rights to prosecute the infringement claims.

## D. *Copyright Infringement*

Notwithstanding the above, the Court has analyzed the merits of each of Plaintiff's claims, particularly to the extent they would not be barred by the statute of limitations if Plaintiff did own the right to prosecute the infringement claims. To prevail on his claims for copyright in-

**3.** In some instances, Plaintiff claims he did not discover the alleged infringement until after August 12, 1993; however, he is charged with knowledge of the alleged infringements on the date they occurred. Plaintiff has demonstrated that he was actively and continuously searching for infringements prior to August, 1993.

**4.** Claims three through fifteen concern publication of books, cards, and video and audio tapes which were originally published prior to August 12, 1993; however, Plaintiff alleges these items were being sold by Defendants at the time he filed his complaint.

fringement, Plaintiff must establish that he owns a valid copyright and that Defendants copied the original elements of his copyrighted work. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir.1996). Absent direct evidence of copying, Plaintiff can indirectly prove copying by establishing that Defendants had access to the copyrighted work and that probative similarities exist between the copyrighted material and the allegedly copied material. *Id.* Liability for copyright infringement attaches only where protected elements of a copyrighted work are copied. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 833 (10th Cir.1993). Thus, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist*, 499 U.S. at 348, 111 S.Ct. 1282.

"One of the fundamentals of copyright law is that a copyright does not protect an idea, but only the expression of the idea." *Autoskill, Inc. v. National Educ. Support Sys.*, 994 F.2d 1476, 1491 (10th Cir.1993). The Copyright Act provides "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (1996). Therefore, to determine claims for copyright infringement, the Tenth Circuit has utilized an "abstraction-filtration-comparison" test. *Country Kids*, 77 F.3d at 1284. Using this test, the court first must separate the ideas which are not protectable from the particular expression of the work. *Id.* at 1285. Then, the court must filter out the unprotected components of the product from the original expression. *Id.* Finally, the court compares the remaining protected elements to the allegedly copied work to determine whether the two works are substantially similar. *Id.*

To determine substantial similarity, the Tenth Circuit has stated that the "ordi-nary observer" test is an appropriate method. *Id.* at 1288. The court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated plaintiff's protectible expression by taking material of substance and value." *Id.* (quoting *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir.1982)). Stated otherwise, "[t]he essence of this test is whether the 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960)). Although the issue of substantial similarity may be an issue of fact for resolution by a jury, a court may determine non-infringement as a matter of law where (1) the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work or (2) no reasonable jury could find that the two works are substantially similar. *Warner Bros. Inc. v. American Broadcasting Companies*, 720 F.2d 231, 240 (2d Cir.1983).

### E. *Chipper Sherlock Dog vs. Snoopy Sherlock Dog*

Many of Plaintiff's claims are based on the allegation that television broadcasts, videotapes, books, and audiotapes based on the Peanuts comic strip story "It's a Mystery, Charlie Brown," allegedly first broadcast in 1974, infringe on Plaintiff's copyright of his "Chipper" comic strip and manuscript. Specifically, claims one through four, six through fifteen, eighteen, nineteen, and twenty-two concern "It's a Mystery, Charlie Brown" or the Peanuts character Snoopy portrayed as a "Sherlock" detective character. Multiple Defendants have filed motions to dismiss these claims, and Plaintiff has filed several motions for summary judgment on some of the claims.

Plaintiff's primary basis for his claims is that both the Chipper and Snoopy characters are portrayed as "cowardly" detective dogs. The law is well established, however, that Plaintiff's copyrights on "Chipper" do not extend to the mere idea of a cowardly detective dog. 17 U.S.C. § 102(b); *Perma Greetings, Inc. v. Russ Berrie & Co.*, 598 F.Supp. 445, 448 (E.D.Mo.1984) ("[T]he 'theme,' the 'plot,' the 'ideas' always may be freely borrowed."); *Country Kids*, 77 F.3d at 1285 (differentiating between expression and ideas). Rather, only Plaintiff's expression of the idea is protected. *Autoskill*, 994 F.2d 1476.

Copyright protection is available for characters portrayed in cartoons. *E.g.*, *Warner Bros.*, 720 F.2d at 240. "In determining whether a character in a second work infringes a cartoon character, courts have generally considered not only the visual resemblance but also the totality of the characters' attributes and traits." *Id.* at 241. This has been characterized as the "total concept and feel" of the copyrighted character. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1167 (9th Cir.1977).

Plaintiff has not alleged or established that any traits of the characters of Chipper and Snoopy are similar other than their alleged portrayal as cowardly detectives. Additionally, a fair viewing of "It's a Mystery, Charlie Brown" and Snoopy's character traits in the story does not indicate that Snoopy is depicted as cowardly. Rather, Snoopy aggressively searches for clues and confronts the other characters in the comic strip as to the location of Woodstock's stolen nest. Furthermore, consistent with Snoopy's traditional character, he does not speak like a human, while Chipper speaks and has more human-like characteristics.

Similarly, Plaintiff's sixteenth and seventeenth claims for relief allege that a Met-

ropolitan Life Insurance Company commercial starring Snoopy as a "Sherlock Dog" infringes on his "Chipper" copyrights. Defendant Metropolitan Life Insurance Company filed a motion to dismiss. In addition, Plaintiff filed a motion for summary judgment on his sixteenth and seventeenth claims against Metropolitan, United Features Syndicate, Charles M. Schulz, and ABC, and CBS.[5]

Again, Plaintiff has failed to establish any similarity in the characters besides the fact that they are both dog detectives. In fact, Plaintiff notes several differences in the two characters. Chipper is a "double life detective and lawyer," while Snoopy is a "double life Met Life Insurance agent." Chipper is inherently cowardly, while Snoopy is inherently a hero who is out of character as a "cowardly Sherlock dog."

In comparing the total concept and feel of "Chipper" to "It's a Mystery, Charlie Brown" and the Chipper and Snoopy characters, the ordinary observer would not be disposed to overlook the disparities and regard their aesthetic appeal as the same. No reasonable jury could find that Chipper is substantially similar to Snoopy as portrayed in "It's a Mystery, Charlie Brown" and the Metropolitan Life commercials, and Defendants are entitled to judgment as a matter of law on Plaintiff's claims one through four, six through nineteen, and twenty-two.

## F. "Chipper" the Cartoon Dog vs. "Chipper" the Puppy

Plaintiff's twentieth claim for relief alleges that advertisements featuring a picture of a puppy with the name "Chipper" infringe on his "Chipper" comic strip copyrights. The advertisements portray the well-known dog associated with RCA and Victor Records, "Nipper," sitting next to a

---

5. Metropolitan Life Insurance Company's Motion also contained a motion to quash service of process which was granted. The Court's minute order of April 16, 1997 states that the motion for summary judgment against Metropolitan is therefore moot. This recommenda-

tion nevertheless addresses Plaintiff's sixteenth and seventeenth claims as they are asserted against Metropolitan, in the event Metropolitan is served with a valid complaint, and other Defendants.

puppy, "Chipper." Plaintiff alleges that a group of the Defendants ("the RCA Defendants") advertised using the "Chipper" puppy in newspapers and on television. Defendants Sears, Roebuck and Co., General Electric Company, Thomson Consumer Electronics, Inc., Montgomery Ward & Co., Jack Barton & Co., Best Buy Company, Fingerhut Corporation, and Ultimate Electronics filed motions to dismiss and/or to strike Plaintiff's amended complaint. Defendants News America Publishing and Turner Broadcasting have joined in the motions to dismiss as to the twentieth claim. In addition, Plaintiff filed motions for summary judgment and to strike Defendants' pleadings on his twentieth claim for relief as to Defendants Sears, Roebuck and Co., General Electric Company, Thomson Consumer Electronics, Inc., Montgomery Ward & Co., Jack Barton & Co., Fingerhut Corporation, and Best Buy Company.

Plaintiff's twentieth claim fails as a matter of law. First, Plaintiff fails to allege or establish access to Plaintiff's work by the Defendants named in this claim for relief. Absent direct evidence of copying, access by Defendants to Plaintiff's work is an element which Plaintiff must establish. *Country Kids*, 77 F.3d at 1284. Furthermore, the name "Chipper" is not subject to copyright protection. "Words and short phrases such as names, titles, and slogans" are not subject to copyright protection. 37 C.F.R. § 202.1. *See also Arvelo v. American Int'l Ins. Co.*, 875 F.Supp. 95, 100 (D.P.R.), *aff'd*, 66 F.3d 306, 1995 WL 561530 (1st Cir.1995). Plaintiff's copyright protects his comic strip in its entirety rather than the name "Chipper." *See id.* at 101 (holding copyright protected advertising campaign in its entirety, rather than two words from the whole document). By obtaining copyrights for his comic strip, Plaintiff has not gained a monopoly on the use of the name "Chipper." Therefore, to establish infringement of his copyrights, Plaintiff would have to show that the RCA puppy "Chipper" is otherwise substantially similar to Plaintiff's comic strip character "Chipper."

Plaintiff's character Chipper is a cartoon dog with human-like qualities. The character is a pen and ink portrayal of an "inherent cowardly, Sherlock dog detective" who thinks and talks much like a human. The RCA puppy Chipper is a real-life puppy, sometimes portrayed in a photograph and sometimes in a drawing. The puppy does not have human-like characteristics and is not featured acting like a human. The puppy is not part of a cartoon comic strip, but it is featured in advertisements for RCA products. The only similarity between Chipper, the RCA puppy, and Chipper, the comic strip character, is the name. Thus, considering the total concept and feel of the characters and having filtered out the unprotected element of the name, no reasonable jury could find that the two works are substantially similar. The RCA Defendants are entitled to judgment as a matter of law on Plaintiff's twentieth claim for relief.

### G. "Chicken Chipper" vs. "Chick'n Chipper"

Plaintiff's twenty-first claim alleges that frozen food packages manufactured by Tyson Foods infringed on his "Chipper" copyrights. The Tyson Foods package labels feature "Chick'n Chippers," which are boneless chicken patties covered in a potato coating. Plaintiff's comic strip "Chipper" uses the phrase "Chicken Chipper" several times in reference to the "cowardly" dog, Chipper. According to Plaintiff, the phrase "Chicken Chipper" is the "very essence" or "core expression" of his "Chipper" creation. Complaint at ¶ 173. Plaintiff alleges that he purchased the "Chick'n Chippers" packages at Safeway, King Soopers, Albertson's and Super K Grocery Stores and that those Defendants are "vicarious infringers" of his copyrights. Complaint at ¶ 173.

Defendants King Soopers, Albertson's, and Tyson Foods each filed motions to dismiss. These motions were joined by Defendants Safeway and Kmart Corporation. Plaintiff then filed a motion for sum-

mary judgment against King Soopers and Safeway and an additional motion for summary judgment against King Soopers, Safeway, Albertson's, and Tyson Foods.

Plaintiff's twenty-first claim fails for several reasons. First, Plaintiff again has not alleged or established access by the Defendants named in this claim to his unpublished copyrighted work. Second, the words "Chicken Chipper" in Plaintiff's comic strip are not protected by Plaintiff's copyright. Plaintiff argues that because the phrase "Chicken Chipper" is nearly identical to the phrase "Chick'n Chippers," substantial similarity is established. This argument, however, ignores established copyright law that words and phrases are not subject to copyright protection. 37 C.F.R. § 202.1; *Arvelo,* 875 F.Supp. at 100. Thus, Plaintiff's copyright protects his comic strip in its entirety rather than the phrase or name "Chicken Chipper." As discussed in connection with Plaintiff's twentieth claim, Plaintiff's copyrights do not grant him a monopoly on the use of the words "Chicken" or "Chipper" or the phrase "Chicken Chipper."

Having filtered out the unprotected element of Plaintiff's works, Plaintiff's claim fails because Tyson's package is not substantially similar to Plaintiff's work. In fact, the two "works" are not even based on a similar idea. Plaintiff's work describes a dog cartoon character named Chipper as a "chicken" to depict the cowardly nature of the dog. Tyson's package portrays its frozen chicken food product. Comparing the Tyson package to Plaintiff's comic strip, an ordinary, reasonable observer would not conclude that Tyson unlawfully appropriated Plaintiff's protectable expression. Therefore, as a matter of law, Plaintiff's twenty-first claim for relief should be dismissed.

## H. *"Chipper" vs. Peanuts and Other Comic Strips*

Plaintiff also asserts that Peanuts greeting cards and comic strips and numerous other comic strips copied certain words or phrases from his "Chipper" comic strip and manuscript. Claims four, twenty-

three through thirty-four, and thirty-six through forty-three concern "Chipper" as compared to various comic strips. Several Defendants have filed motions to dismiss; Plaintiff has filed motions for summary judgment on some of these claims.

Each of these claims should be dismissed for similar reasons as discussed above. For example, Plaintiff's fifth and thirtieth claims for relief allege that a 1978 Hallmark greeting card and other comic strips infringe on his "Chipper" manuscript. In the greeting card, the Peanuts characters are discussing Charlie Brown dressing up as a ghost for Halloween by using an old sheet with eye holes cut in it. As Charlie Brown walks by in the sheet, appearing as Charlie Brown covered in a sheet rather than a ghost, the character Linus states, "Somehow, something seems to have gotten lost in the translation!" In Plaintiff's "Chipper" manuscript, the characters are discussing the character Chipper's "swill soup." The character Sydney gestures a "thumbs down" sign. Chipper misunderstands and happily ladles more soup into Sydney's bowl. Sydney states, "Somehow, somebody lost something, somewhere, someway in the translation!? ?" Another comic strip, "Born Loser," uses the phrase "it seems to lose something in.the translation" in a different context—a discussion between a husband and wife. Plaintiff also attaches a newspaper article from the Rocky Mountain News in which a headline reads, "French 'Reeds' loses something in translation." Plaintiff's Ex. 45. Besides the use of a phrase regarding losing the meaning in the translation, the works are completely different. This is a classic example of various authors using a common idea or theme expressed in a completely different manner from Plaintiff's work. As previously noted, neither short phrases nor ideas are subject to copyright protection. 37 C.F.R. § 202.1; 17 U.S.C. § 102(b); *Autoskill,* 994 F.2d at 1491. After filtering out the unprotected elements of Plaintiff's comic strip and manuscript and comparing the works to

the alleged infringers, the works are not substantially similar.

The remainder of Plaintiff's claims which allege copying by comic strips fail for the same reasons. Plaintiff's contentions that his ideas and use of certain words or phrases misconstrue the fundamentals of copyright law. This is true for Plaintiff's use of the word "serious" in connection with activities such as painting or sports (twenty-third claim); the use of a reference to rabies or being rabid (twenty-fourth claim); comic strips about fishing and the idea of catching the fish's relatives (twenty-fifth and forty-first claims); the idea of not paying for something until tomorrow (twenty-sixth claim); the idea of a character's enthusiasm for a task being thwarted by elements such as newly seeded grass, rain, or snow (twenty-seventh claim); the idea of mistakenly going to work or school on a Saturday or Sunday (twenty-eighth and twenty-ninth claims); the idea of having good intentions about working and then falling asleep on the job (thirty-first claim); the idea of using a broken umbrella or not opening an umbrella in the rain because the weather forecast did not call for rain (thirty-second claim); the idea of admiring one's self in a mirror (thirty-third and thirty-fourth claims); the idea of chasing something and then changing one's mind and going the opposite direction (thirty-sixth claim); the idea of "holding down a job" by sitting on menus vs. having the "job" of being a paper weight (thirty-seventh claim); the idea of intentionally listening to a record with the sound off vs. enjoying listening to a record that skips (thirty-eighth claim); the idea of a character finding something he believes is old and valuable when the item is actually something else of little value (thirty-ninth claim); the idea of something being up a character's nose (fortieth claim); the idea of dogs climbing trees (forty-first claim); the idea of swatting flies (forty-second claim); and the use of many other ideas, words, or phrases which Plaintiff used in his comic strips or manuscripts (forty-third claim).

Although the key to the ordinary observer test is substantial similarities, not differences, courts have acknowledged that "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to the plaintiff's." *Perma Greetings*, 598 F.Supp. at 449–450. *See also Warner Bros.*, 720 F.2d at 241 (noting that numerous differences between works tend to undercut substantial similarity). Furthermore, "where the protected work and accused work express the same idea, similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Durham Indus., Inc. v. Tomy Corp.* 630 F.2d 905, 913 (2d Cir.1980).

A comparison of each of the comic strips in Plaintiff's claims shows that the only elements which are arguably common to Plaintiff's "Chipper" comic strip and manuscript are ideas, themes, single words, or phrases. These elements are not protected. *Country Kids*, 77 F.3d at 1285. "The similarity to be assessed must concern the *expression* of ideas, not the ideas themselves." *Warner Bros.*, 720 F.2d at 239 (emphasis added). Liability for copyright infringement attaches only where *protected elements* of a copyrighted work are copied. *Gates Rubber*, 9 F.3d at 833 (emphasis added).

Plaintiff mistakenly asserts that the alleged "core expression" of his work, which is actually his idea for the plot, theme, or a phrase in the comic strip, is protected. He has failed to establish any similarity in the expression of his ideas as compared with the alleged infringing works, and in some instances, his exhibits even note the different manner in which the ideas are expressed. In each case, the characters are different and not similar to Plaintiff's "Chipper" characters, the situations in which the ideas, words, or phrases are expressed are different, and the manner in which they are expressed are different. Under the ordinary observer test, an ordi-

nary, reasonable person would not find any of the comic strips referenced in Plaintiff's claims to be substantially similar to Plaintiff's "Chipper." Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's claims four, twenty-three through thirty-four, and thirty-six through forty-three.

## I. *"Langsyne" Comic Strip vs. "For Better or Worse" Comic Strip*

Plaintiff's thirty-fifth claim for relief alleges that the comic strip "For Better or Worse" infringes on the copyright of his comic strip "Langsyne," dated 1975. Defendant Universal Press Syndicate filed a motion to dismiss this claim, and Plaintiff filed a motion for summary judgment as to this claim.

Plaintiff's "Langsyne" portrays four children in a neighborhood backyard. Two of the boys admire a girl sun bathing on a blanket. Another boy states "She ain't swell at all—just my sister." In the "For Better or Worse" comic strip, four women appear standing on a sidewalk in a snow storm. Three of the women admire a man passing by in a car who honks his horn. One of the women then states, "That was *disgusting* . . . . That was my brother." Plaintiff's Ex. 50.

Plaintiff again mistakenly attempts to assert that his ideas are protected by the copyright. Although the ideas or themes of the two comic strips are similar, the expression of the ideas is not substantially similar. Plaintiff asserts that the comic strips are similar because they are based on the same "core expression" communicated in "direct opposites" (i.e. summer clothes vs. winter clothes, little boys vs. big girls, brother vs. sister, etc.). As such, Plaintiff again attempts to identify his idea as the core of protectable expression in his work. The differences in the expression of the idea or plot of the comic strips, however, are precisely the attributes that make the two works different. In this case, the only similarity in the two works is the underlying plot or theme. Under the ordinary observer test, a reasonable jury could not find the "Langsyne" comic strip sub-

stantially similar to the "For Better or Worse" comic strip. Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's thirty-fifth claim for relief.

## IV. CONCLUSION

For the above reasons, Defendants are entitled to judgment as a matter of law on each of Plaintiff's claims.

THEREFORE, IT IS RECOMMENDED that the following motions be granted to the extent they seek dismissal of Plaintiff's claims, and that the complaint be dismissed in its entirety:

1. Motion to Dismiss of Defendant King Soopers, filed December 17, 1996;

2. Response of Defendant Safeway Inc. to Plaintiff's Amended Complaint, filed December 20, 1996 (referencing joinder in motion to dismiss filed by Defendant King Soopers);

3. Defendant TCI of Colorado's Motion to Dismiss or for Summary Judgment, filed January 10, 1997;

4. Defendant Metropolitan Life Insurance Co.'s Motion to Quash Service of Process, or Alternatively, Motion to Dismiss, filed January 10, 1997;

5. Sears, Roebuck and Co.'s Motion to Dismiss and/or Strike Plaintiff's Amended Complaint, filed January 10, 1997;

6. Joint Motion for Dismissal of Plaintiff's Amended Complaint by Defendants General Electric Company, Thomson Consumer Electronics, Inc., Montgomery Ward & Co., Jack Barton & Co. and Best Buy Company, filed January 13, 1997;

7. Defendant Fingerhut Corporation's Motion to Quash Service of Process or, Alternatively, Motion to Dismiss, filed January 21, 1997;

8. Defendant Alberton's, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, filed January 21, 1997;

9. Defendant Albertson's Joinder in King Soopers' Motion to Dismiss, filed January 21, 1997;

10. Defendant Tyson Foods's Motion to Dismiss for Failure to State a Claim, filed January 21, 1997;

11. Defendant Universal Press Syndicate, Inc.'s Motion to Dismiss or, in the Alternative, Strike Plaintiff's Complaint, filed January 22, 1997;

12. Defendants United Feature Syndicate, Inc., The E.W. Scripps Co., Charles Schulz and Charles M. Schulz Creative Associates, The Denver Publishing Col, United Media & Newspaper Enterprise Association, Inc., News America Publishing Inc., Hallmark Cards, Inc., Bill Melendez Productions, Advance Publications, Inc., Random House, Inc., Scholastic, Inc., SI Holdings, King Features Syndicate, Inc., Cowles Syndicate, Inc., Washington Post, IBC Holdings Corporation, ABC, Inc., Kmart Corporation and Universal Press Syndicate, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support, filed March 21, 1997;

13. Defendant Sears' Joinder in RCA Defendants' Motion to Dismiss, filed March 21, 1997; and

14. Defendants CBS, Inc., Turner Broadcasting System, Inc., and The Walt Disney Company's Motion to Dismiss for Failure to State a Claim, filed March 21, 1997.

FURTHER, IT IS RECOMMENDED that the following motions filed by Plaintiff be denied:

1. Motion for Rule 56 Summary Judgement on *Proportion* of Plaintiff's 21st Claim; Against Co–Defendants King Soopers and Safeway Inc., filed January 8, 1997;

2. Motion to Strike and Rule 56 Summary Judgement on Proportion of Plaintiff's Twentieth Claim, Against Sears Roebuck and Company, filed January 29, 1997;

3. Motion for Rule 56 Summary Judgement on *Proportion* of Plaintiff's 21st Claim; or a Jury Trial Against Co–Defendants King Soopers, Safeway Inc., Albert-

son's & Tyson Foods, filed February 11, 1997;

4. Motion for a Rule 56 Summary Judgement or a Jury Trial on Plaintiff's 35th Claim Against *Accessed* Universal Press Syndicate Inc., and Motion to Strike UPS Unresponsive Sham Pleading, filed March 5, 1997;

5. Plaintiff's Response Brief to Defendant Sears, Roebuck and Co. and Motion to Strike Defendants Motion to Dismiss and Strike Defendants Brief as a Sham Pleading, filed March 7, 1997;

6. Motion for a Rule 56 Summary Judgment or a Jury Trial on Proportion of Plaintiff's Twentieth Claim, Against Defendants General Electric Company, Thomson Consumer Electronics, Inc/RCA Montgomery Ward & Co., Jack Barton & Co., Fingerhut Corporation and Best Buy, filed March 10, 1997;

7. Motion for Rule 56 Summary Judgement or a Jury Trial for All Profits on Plaintiff's 16th and 17th Claims; Against Metropolitan Life Insurance Company, *Accessed* United Features Syndicate, Charles M. Schulz and Vicarious Infringers ABC, CBS, filed March 17, 1997;

8. Motion by Plaintiff Opposing TCIOC (TCI) and Defendants' Opposition to Plaintiff's Amended Complaint (Already Granted) and Motion to Strike TCIOC's Motion for a Summary Judgement and Dismissal; and Strike TCIOC's Answer as a Sham Defense *Plaintiff Also Motions for a Rule 56 Summary Judgement Against TCI on 18th, 19th & 22nd Claims or a Jury Trial on TCI Profits by Transmitting "It's a Mystery, Charlie Brown"; by *Accessed* Disney who *Willfully* Infringed Plaintiff's Copyrights Four Times, filed March 17, 1997;

9. Plaintiff's Brief Opposing *Accessed* Defendant Universal Press Syndicate's Motion to Dismiss and Strike Plaintiff's Complaint and Motion to Strike Defendant's Brief as Another Unresponsive Pleading to Plaintiff's *35th Claim,* filed April 10, 1997;

10. Motion for a Rule 56 Summary Judgement or a Jury Trial on Plaintiff's 5th – 6th – 12th – 14th – 18th – 19th – 22nd – 25th – 30th – 32nd – 39th & 41st Claims Against *Accessed* Defendants, filed April 30, 1997; and

11. Motion for a Rule 56 Summary Judgement or a Jury Trial on Plaintiff's 26th – 27th – 28th – 29th – 31st and 42nd Claims Against *Accessed* Defendants, filed June 2, 1997.

FURTHER, IT IS ORDERED that pursuant to Fed.R.Civ.P. 72(b), the parties have ten (10) days after service hereof to serve and file written, specific objections to the findings of fact, conclusions of law, or recommendations of the Magistrate Judge with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file such written specific objections to the findings of fact, conclusions of law and recommendations of the Magistrate Judge as set forth in this document **will bar** the party from a *de novo* determination by the District Judge. *United States v. Raddatz*, 447 U.S. 667, 676–83, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Additionally, the failure to file written specific objections to the findings of fact, conclusions of law or recommendations of the United States Magistrate Judge in this document within ten (10) days after being served with a copy **will bar** appellate review of the findings of fact, conclusions of law or recommendations of the Magistrate Judge. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Talley v. Hesse*, 91 F.3d 1411 (10th Cir.1996).

June 4, 1997.